IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 1:19-cr-00014 |
| v. ) | |
| ) | SENTENCING MEMORANDUM |
| DALTON LEE DUKES, ) | |
| ) | |
| Defendant. ) | |

The United States, by and through the United States Attorney for the Southern District of Iowa and the undersigned Assistant United States Attorney, files this Sentencing Memorandum to support its position on the appropriate sentence to be imposed.

**I.      Procedural Background**

The Defendant Dalton Lee Dukes, hereinafter, Dukes, was initially indicted on March 26, 2019, for Conspiracy to Distribute a Controlled Substance, three counts of Distribution of a Controlled Substance, a count of Possession of a Firearm in Relation to a Drug Trafficking Offense and a count of being a Prohibit Person in Possession of a Firearm. (Docket Number 1, hereinafter, DCT 1). On May 21, 2019 a Superseding Indictment was filed with the same counts altering the language in Count 6 to show knowledge of Dukes' status as a prohibited person. (DCT 6 and10).

A plea agreement was reached between the parties and filed with the Court on September 6, 2019. (DCT 45). The plea agreement called for the Dukes to enter a guilty plea to Counts 1 and 5 of the Superseding Indictment. (DCT 45, ¶ 1). The Dukes entered the guilty pleas on September 6, 2019, before the Honorable Helen Adams, Chief Magistrate Judge for the Southern District of Iowa. (DCT 43). Sentencing has been set for January 22, 2020 in Council Bluffs,

Iowa.

The only objection to the guideline calculations is made by the government regarding the finding by the United States Probation Office that the Dukes is only responsible for 30.78 grams of actual methamphetamine. To come to this conclusion, the probation office disregards a drug amount attributed to the Dukes by cooperators in the Pre-Sentence Report ¶ 16, stating "Specific quantities of methamphetamine were not provided by either CS and, therefore, no additional drug quantities were attributed to Dukes." (PSR ¶ 16).

According to CS#1, CS #1 was moving between 20 and 25 pounds of methamphetamine a month and Dukes was CS #1's main customer. (PSR ¶ 16). In addition, a second CS confirmed that Dukes was the main customer. (PSR¶ 16). It would seem unlikely, therefore, that Dukes was responsible for only 30.78 grams.

Paragraph 16 was not objected to by the Dukes and therefore can be considered as true by the Court. See, *United States v. Zayas,* 758 F.3d 986, 990 (8th Cir. 2014) ("The district court may rely on factual allegations in a presentence report ... as long as [the Dukes] has not objected to the facts themselves."). The Eighth Circuit Court of Appeals has instructed that: "In determining the base offense level in a conspiracy-to-distribute conviction, all reasonably foreseeable drug quantities, see U.S.S.G. § 1B1.3(a)(1)(B), that are 'part of the same course of conduct or common scheme or plan as the offense of conviction,' are relevant conduct. U.S.S.G. § 1B1.3(a)(2). The course of conduct, or common scheme or plan, is distribution." *United States v. Fraser,* 243 F.3d 473, 475 (8th Cir.2001).

In the instant case, the Dukes has admitted to a conspiracy and therefore he is responsible for all reasonably foreseeable drug amounts in the conspiracy. The source of the Dukes's methamphetamine was moving between 20 and 25 pounds of methamphetamine a month, and

the Dukes was the main recipient of that methamphetamine. The facts show that Dukes was in the conspiracy from November of 2018 up to Dukes' arrest on February 2019. A conservative estimate would make Dukes responsible for the 20 to 25 pounds of methamphetamine that the conspiracy was distributing for three months. This would place the amount of methamphetamine approximately twenty-seven kilos of methamphetamine. (Twenty pounds times 453.6 grams for three months.)

Besides PSR ¶ 16 establishing a higher drug amount, the government will put on evidence regarding the amount of methamphetamine attributable to Duke's.

CS#2 stated in CS#2's proffer statement that Dukes made at least 10 trips to pay for methamphetamine from CS# 1, paying between $5,000 and $7,000 each time. This amount of money would be the correct amount for a pound of methamphetamine. Even using this approach, Dukes in the instant case would be approximately four and half kilos of methamphetamine.

At each if the buys made by a confidential informant, Dukes was seen with more methamphetamine than just the delivered amount. On November 29, 2018 the CI went into the Dukes' residence to make a purchase of methamphetamine. The purchase was for 8 grams of methamphetamine for $200. While in the residence, the CI observed that the Dukes had approximately three quarters of a pound of methamphetamine from which the Dukes obtained the 8 grams. The purchased methamphetamine was weighed at the State of Iowa Laboratory and found to a net weight of 6.38 grams, which was tested and determined to be 100% pure, making the actual methamphetamine purchased 6.38 grams. Three quarters of a pound would be approximately 349 grams of methamphetamine, with a purity of 100 % would establish an actual methamphetamine amount of 349 grams. Significantly more than the 39 grams probation

believes is appropriate.

The same CI made a purchase of methamphetamine from Dukes on December 5, 2018, obtaining approximately a half ounce of methamphetamine. When weighed out, the methamphetamine weighed approximately 12.14 grams. When tested the methamphetamine was found to be 100 percent pure, meaning there was 12.14 grams of actual methamphetamine. While in Dukes' residence obtaining the methamphetamine, the CI observed Dukes take the delivered methamphetamine from a larger amount, which the CI estimated at approximately half pound. At 100% pure a half pound of methamphetamine would be approximately 226 grams of actual methamphetamine. Again, well above where probation has placed Dukes.

Finally, the CI made a purchase of methamphetamine from Dukes on January 7, 2019 at the Dukes' residence. This time the amount of methamphetamine purchased was approximately 12.32 grams and was determined to be 12.29 grams of actual methamphetamine. At the time of the purchase, the CI observed that Dukes obtained the 12.32 grams from a larger amount of methamphetamine in Dukes' control, with the CI estimating it to be approximately a half pound. The half-pound of methamphetamine would have be another 220 grams of actual methamphetamine.

All three of these purchases, and the subsequent observations by the CI were within the time from of the conspiracy and while Dukes was obtaining pounds of methamphetamine from CS#1. In other words, it is clear that Dukes is responsible for well over 50 grams of actual methamphetamine and the presentence report should be amended to reflect a more accurate amount of actual methamphetamine than 30.78 grams. "[E]vidence of specific drug quantities is not required, as '[t]he court may make a specific numeric determination of quantity based on imprecise evidence so long as the record reflects a basis for the court's decision.' " *United States*

*v. Morales,* 808 F.3d 362, 368 (8th Cir. 2015) (further citation omitted.)

**II.     Title 18 U.S.C. § 3553(a) factors.**

Currently Dukes' sentence has been determined to be 120 to 125 months on Count 1 and an additional 60 months on Count 5. The Court however, needs to determine a reasonable sentence to impose on Dukes after determining the appropriate guideline range.

The factors the Court must use to determine a reasonable sentence are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed;
>
>> (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the sentencing range from the guidelines;
>
> (5) any pertinent policy statements by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to victims.

(18 U.S.C. § 3553(a)).

In the instant case, the Court needs to consider the nature and characteristics of Dukes before determine what sentence to impose. Omaha law enforcement has been investigating a shooting that occurred near 17th and Fowler Street in Omaha, Nebraska. Though the exact date

of the shooting is not known at this time, it is known to have happened in 2018. Investigators have determined that Dukes used a .32 caliber handgun to scare off another person who was following Dukes and Dukes' girlfriend. According to Dukes, he went out of his girlfriend's house and approached the party when shots were fired. According to Dukes, who was a convicted felon at the time, fired back in the direction of the person shooting at him. This occurred in a residential neighborhood in Omaha. Dukes did not know if he hit anyone or not. Testimony will be provided on this point at the time of sentencing.

Looking at the Pre-Sentence Report also supports the imposition of a major term of incarceration. In 2007, Dukes handed his brother Jarod Jensen a bag of OxyContin to hide, which Jensen did by swallowing the bag. When the bag came open in Jensen's stomach, it resulted in Jensen's death. (PSR ¶ 65). Even after this tragedy, Dukes continued to distribute controlled substances.

It is also of note that Dukes has been through drug treatment on numerous occasions, and was successful on several occasions. Even with this treatment, Dukes continued to deal and use. This characteristic shows the need for a lengthy term of imprisonment to prevent Dukes from using controlled substances and of course, distributing.

Finally, the Court must consider sentencing disparity when imposing a sentence. By imposing more than the mandatory minimum sentencings, the Court will be imposing a sentence that avoids unwarranted sentencing disparities between like situated defendants.

### III. Conclusion

The facts which prove the offense in the instant case shows that the determination of 30.78 grams is simply without support. Dukes entered a guilty plea to a distribution conspiracy, and therefore, he is responsible for all controlled substances that are reasonably foreseeable to

him.  The evidence is, on the conservative side, that Dukes made at least ten payments to CS#1, and that the amount of money was equivalent to the sale of a pound of methamphetamine.

The court also knows that the methamphetamine that Dukes was selling was incredibly pure.  Based on the information provided by the CI who made the purchases described in the Superseding Indictment, the Court can readily find that the Dukes is responsible for almost 800 grams of actual methamphetamine.

Using either drug determination, the pounds purchased or the methamphetamine seen as amounts were sold to the CI, Dukes should be determined to be a BOL of 34.  (See 2D1.1(c).)  A review of 3553(a) factors, which the Court must consider, also leads to a conclusion that Dukes should be given a significant sentence.

          Respectfully Submitted,

          Marc Krickbaum
          United States Attorney

By: *S/Richard E. Rothrock*_____
    Richard E. Rothrock
    Assistant United States Attorney
    8 S.6th St. Suite 348
    Council Bluffs, Iowa 51501
    Tel: 712-256-5009
    Fax: 712-256-5112
    Email: Richard.Rothrock@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

\_\_\_\_U.S. Mail \_\_\_\_\_ Fax \_\_\_\_\_Hand Delivery

 X   ECF/Electronic filing    \_\_\_Other means

UNITED STATES ATTORNEY

By: */s/ms*
     Paralegal Specialist